**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-00601-NYW-KAS

JUANITA MENDOZA,

      Plaintiff,

v.

SHARKNINJA OPERATING, LLC.,

      Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

This matter comes before the Court on two motions:  (1) SharkNinja's Motion to Exclude Expert Testimony of Derek King (the "Motion to Exclude"), [Doc. 31]; and (2) SharkNinja's Motion for Summary Judgment (the "Motion for Summary Judgment"), [Doc. 32].  The Court has reviewed the Motions, the related briefing, and the applicable case law.  For the following reasons, the Motion to Exclude and Motion for Summary Judgment are respectfully **GRANTED**.

**BACKGROUND**

Plaintiff Juanita Mendoza ("Plaintiff" or "Ms. Mendoza") alleges that she was injured when using a blender designed and manufactured by Defendant SharkNinja Operating, LLC ("Defendant" or "SharkNinja").  *See* [Doc. 1 at ¶¶ 1, 26].  Specifically, Plaintiff alleges that Defendant's NutriNinja blenders are defectively designed in that "the extremely fast-moving blade of the blenders heat[s] the contents of the sealed bullet-shaped canister, which can (and does) unexpectedly explode when being used in its normal and intended manner by consumers."  [*Id.* at ¶ 2].  Ms. Mendoza alleges that when

she was using the blender for its intended purpose, the blender's attached cup was "explosively separate[ed] from the blade base," which caused the blender's "scalding hot contents to be forcefully ejected onto" her. [*Id.* at ¶ 26]. Ms. Mendoza filed this case on March 8, 2023, asserting four causes of action: (1) strict products liability ("Count One"), [*id.* at ¶¶ 31–37]; (2) negligence ("Count Two"), [*id.* at ¶¶ 38–42]; (3) breach of implied warranty of merchantability ("Count Three"), [*id.* at ¶¶ 43–49]; and (4) breach of implied warranty of fitness for a particular purpose ("Count Four"), [*id.* at ¶¶ 50–55]. In her Response to SharkNinja's Motion for Summary Judgment, Plaintiff "concedes her claims for manufacturing defect, failure to warn defect and implied warranties." [Doc. 34 at 14–15 (capitalization altered)]. As a result, only Count One asserting strict liability based on a design defect and Count Two asserting negligence remain.

Defendant now moves to exclude the testimony of Plaintiff's liability expert, Derek King ("Mr. King"). [Doc. 31]. Defendant also moves for summary judgment in its favor on Plaintiff's claims. [Doc. 32 at 21]. The Court addresses the Motion to Exclude first, given that it may affect the scope of evidence the Court may consider in ruling on the Motion for Summary Judgment.

**LEGAL STANDARDS**

## I.    Rule 702

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  "In essence, Rule 702 permits a court to admit expert testimony that is 'both reliable and relevant.'"  *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1172 (10th Cir. 2020) (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006)).  The party proffering expert testimony has the burden of showing its admissibility by a preponderance of the evidence.  *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1048 (D. Colo. 2011).

It is well established that trial courts are charged with the responsibility of acting as gatekeepers to ensure that expert testimony is reliable and relevant.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–52 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588–89 (1993).  To fulfill that gatekeeper function, the trial court first analyzes whether the proffered expert is qualified "by knowledge, skill, experience, training, or education" to render their opinions.  Fed. R. Evid. 702; *Bill Barrett Corp. v. YMC Royalty Co.*, 918 F.3d 760, 770 (10th Cir. 2019).  If the expert is qualified, the trial court must determine whether the expert's opinions are reliable by assessing the underlying reasoning and methodology.  *Bill Barrett Corp.*, 918 F.3d at 770.  The court must also determine whether the expert's opinions are "applicable to a particular set of facts," i.e., are relevant to the case at hand.  *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003).  This inquiry "encompasses Rule 702's requirement that the evidence help the trier of fact to understand the evidence or to determine a fact in issue."  *Sanderson*, 976 F.3d at 1172 (cleaned up).

II.    **Rule 56**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (cleaned up).

At summary judgment, a movant that does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant must only point the Court to a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once this movant has met its initial burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court views the record in the light most favorable to the nonmoving party. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

**ANALYSIS**

I.    **The Motion to Exclude**

SharkNinja seeks to exclude the opinions of Ms. Mendoza's liability expert, Derek King ("Mr. King"). It argues generally that Mr. King's opinions are not reliable and fail to

meet the minimum requirements of Rule 702.  *See* [Doc. 31].[1]  "In reviewing whether an expert's testimony is reliable, the trial court must 'assess the reasoning and methodology underlying the expert's opinion.'"  *Rodriguez-Felix*, 450 F.3d at 1123 (quoting *Dodge*, 328 F.3d at 1221).  "To be reliable under *Daubert*, an expert's scientific testimony must be based on scientific knowledge, which 'implies a grounding in the methods and procedures of science' based on actual knowledge, not 'subjective belief or unsupported speculation.'"  *Dodge*, 328 F.3d at 1222 (quoting *Daubert*, 509 U.S. at 590).  Expert opinions must also be based on facts that enable the expert "to express a reasonably accurate conclusion as opposed to conjecture or speculation," though "absolute certainty" is not required.  *Id.* (quotation omitted).  The proponent of evidence need not demonstrate that the expert is "undisputably correct," but the party must show that "the opinion is based on facts which satisfy Rule 702's reliability requirements."  *Id.* (quotation omitted).

## A.    Opinions Suggesting a "Cool to Explosively Hot" Theory

Relevant here, Plaintiff alleges a design defect in the NutriNinja blender in that "pressure from the frictional energy" in the blender heats up cool or room-temperature contents to a temperature "so hot that the pressure inside the cup forces the cup to

---

[1] Defendant does not request an evidentiary hearing.  [Doc. 31 at 16 n.2].  Plaintiff states that "[i]f the Court believes further information about Mr. King's work with Defendant's blenders and others would be helpful, Plaintiff requests in the alternative that a *Daubert* hearing be scheduled."  [Doc. 33 at 12].  Rule 104 requires a hearing on preliminary questions of admissibility in civil cases "when justice so requires."  Fed. R. Evid. 104(c)(3).  "[W]hile a party may request a *Daubert* hearing, it is within the Court's discretion to determine whether a hearing is necessary."  *A.R. ex rel. Pacetti v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, No. 12-cv-02197-RM-KLM, 2013 WL 5463518, at *10 (D. Colo. Sept. 30, 2013).  Upon review of Mr. King's report and the Parties' arguments, the Court does not find a hearing necessary to resolve the Motion to Exclude because it does not believe that any information gleaned at a hearing could cure the deficiencies identified herein.

separate from the blade while the blender is still running," which "cause[s] the hot contents

of the cup to explosively project outward without warning." [Doc. 1 at ¶¶ 18–19]. Mr. King

opines in his report that Plaintiff's "incident description and injuries are consistent with a

pressurized release of hot contents." [Doc. 31-1 at 10]. He also notes, however, that his

testing "demonstrates that a cold water recipe will not build up significant thermal energy

and pressure within 1 minute of blending."[2] [*Id.*]. He thus opines that "[i]t is likely that

Ms. Mendoza started with warm or hot water, or blended for longer than a minute, or a

combination of these." [*Id.*]; *see also* [*id.* at 19 ("Exemplar testing indicates that most

likely the subject incident involved an accumulation of blending time and/or blending with

warm/hot water.")].

         As an initial matter, to the extent that Defendant is arguing that Mr. King does not,

and cannot, offer the opinion that there is a design defect in that it permits the blender's

contents to go from "cool to explosively hot" in a short amount of time, *see* [Doc. 31 at 2],

this Court respectfully agrees that Mr. King does not expressly articulate nor support such

a theory. *See* [Doc. 31-1]. Defendant further construes Mr. King's report as an opinion

that the normal and intended use of the blender, including blending cold or warm liquids

for any length of time, can create and cause a pressurized release of hot contents. *See*

[Doc. 31 at 6]. Defendant seeks to exclude any such opinion, asserting that Mr. King

provides no foundation or analysis to support his conclusion. [*Id.*]. Specifically, with

respect to cold liquids, SharkNinja observes that Mr. King tested the exemplar blender

using a "cold water recipe" and found that blending cold liquids for one minute would not

---

[2] According to Mr. King's report, Ms. Mendoza represents that she used the blender for
30 seconds, and when she grasped the lid, the cup exploded. [Doc. 31-1 at 4].

build up significant thermal energy and pressure.  [*Id.* at 6–7]; *see also* [Doc. 31-1 at 10].
It argues that there is no support in Mr. King's expert report for any suggestion that
blending cold contents for greater than one minute *could* cause sufficient thermal energy
and pressure for an explosion, as Mr. King suggests.  [Doc. 31 at 6–7].

As for Mr. King's suggestion that blending warm liquids could cause an explosion
of hot contents, Defendant argues that this opinion is unreliable and lacking in foundation
because Mr. King conducted no analysis or testing with respect to blending warm water.
[*Id.* at 7].  Instead, Defendant points out, Mr. King states that additional testing would be
required "to more completely characterize [temperature] and pressure vs blending times
and modes, as well as starting with pre-heated water."  [Doc. 31-1 at 7]; *see also* [Doc.
31 at 7].  Defendant asserts that "there is no reliable foundation for King's suggestion that
Plaintiff's incident was likely caused by starting the blending process with 'warm' water,
or blending longer than a minute, or a combination of both."  [Doc. 31 at 7].  SharkNinja
asks the Court to preclude Mr. King from testifying that normal and intended use of the
NutriNinja blender, including blending cold or warm liquids for any period of time, can
cause a pressurized release of hot contents.  [*Id.* at 8].

In her Response, Ms. Mendoza maintains that Rule 702 "and case law do not
require . . . testing for Mr. King's opinions to be admissible."  [Doc. 33 at 3]; *see also* [*id.*
at 10].  She goes on to argue that a lack of testing raises only a credibility issue with
respect to the weight of Mr. King's opinion—not an admissibility issue for the Court to
decide.  [*Id.* at 10].[3]

---

[3] Ms. Mendoza also asserts that the issues in Defendant's Motion to Exclude "were
recently ruled upon" in *Brown v. SharkNinja Operating, LLC*, 749 F. Supp. 3d 1342 (N.D.
Ga. 2024).  *See* [Doc. 33 at 9].  The Court is aware of and has reviewed the *Brown*
decision.  However, the *Brown* decision is not binding on this Court, *Camreta v. Greene*,

The Court is respectfully unpersuaded by Plaintiff's attempt to write off Defendant's challenge as one of weight, not admissibility.  In 2023, Rule 702 was amended to clarify that the proponent of expert testimony must show that it is "more likely than not" that the expert's testimony is based on sufficient facts or data and is the product of reliable principles and methods.  Fed. R. Evid. 702. "The 2023 amendments are intended to correct some courts' prior and inaccurate application of Rule 702."  *Hoog v. Dometic Corp.*, No. 20-cv-00272-JD, 2024 WL 1234951, at *4 (W.D. Okla. Mar. 22, 2024).  Prior to the amendment, "many courts [had] held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility.  *These rulings are an incorrect application of Rule[] 702*."  Fed. R. Evid. 702 advisory committee's note to 2023 amendment (emphasis added).  Only after the proponent has proved it more likely than not that an expert's opinion is reliable do challenges to an expert's opinion go to weight alone.  *See id.*  Accordingly, to properly exercise its gatekeeping function, the Court must consider the reliability of Mr. King's testimony.  *Huss v. SharkNinja Operating LLC*, No. 1:23-cv-01435-JMS-MKK, 2025 WL 257226, at *6 (S.D. Ind. Jan. 21, 2025).

Moreover, Ms. Mendoza is correct that "testing is not always required to satisfy the reliability threshold of Rule 702."  *Heer v. Costco Wholesale Corp.*, 589 F. App'x 854, 862 (10th Cir. 2014).  However, "an expert must still show under Rule 702 that his opinion is based on sufficient facts or data and on reliable principles and methods."  *Rodgers v.*

---

563 U.S. 692, 709 n.7 (2011), and while Plaintiff characterizes Mr. King's opinions here as "substantially similar" to those in *Brown*, the Court must make an independent determination as to the admissibility of Mr. King's specific opinions in this case.

*Beechcraft Corp.*, 759 F. App'x 646, 664–65 (10th Cir. 2018).  Here, Mr. King states that

he tested the exemplar blender as follows:

> The exemplar cup was modified to allow internal temperature and pressure
> measurements.  Water-only tests with 2 cups were performed with Low,
> Med, and High modes.  A single self-timed (1 minute) iteration of each mode
> was run, and the water was changed for each test.  The High mode was
> repeated with 2 cups of water, 3 dried chili pods, and 1 teaspoon of cumin
> seeds.

[Doc. 31-1 at 7].[4]  He obtained the following results:

> The temperature increase ranged from 3.3 °F to 9.1 °F, and the pressure
> increase ranged from 0.4 to 0.6 psi.  Additional testing may be done to more
> completely characterize temperate and pressure vs blending times and
> modes, as well as starting with pre-heated water.

[*Id.*].  Mr. King then appears to jump to the conclusion that Ms. Mendoza "likely" used

warm water, blended for longer than a minute, or both, [*id.* at 10], and suggests that this

assumed use caused the subject incident, [*id.* at 19], despite the fact that he did not

conduct any testing using warm water or blending for longer than one minute.

Testing "is particularly important when a proposed expert relies on novel theories

or where the basis for the expert's opinion is subject to debate."  *Heer*, 589 F. App'x at

862 (citing *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1235–36 (10th Cir. 2004)).  The

Court finds that the lack of testing here—where Mr. King's limited tests did not produce

results similar to the subject incident, and he appears to simply assume that other tests

might yield different results—seriously undermines the reliability of Mr. King's testimony.

Neither Mr. King nor Ms. Mendoza has "identified a known and undisputed scientific

principle or theory that demonstrates testing was unnecessary to establish the reliability

---

[4] Though not entirely clear, it appears that Mr. King tested the blender using only cold
water.  *See* [Doc. 31-1 at 10 (stating that his testing "demonstrates that a cold water recipe
will not build up significant thermal energy and pressure within 1 minute of blending")].

of" Mr. King's speculative opinion. *Taber v. Allied Waste Sys., Inc.*, 642 F. App'x 801, 810 (10th Cir. 2016). Indeed, there is nothing in Mr. King's report setting forth any scientific principles supporting his conclusion that using cold or warm liquids for any period of time (i.e., using the blender as intended) could cause an explosive release. *See* [Doc. 31-1 at 7, 10, 19]. For instance, there are no principles of thermodynamics, formulas, calculations, or peer-reviewed literature to support Mr. King's conclusions. *Cf. Ruff v. Ensign-Bickford Indus., Inc.*, 171 F. Supp. 2d 1226, 1243 (D. Utah 2001) (concluding that testing was not required to survive a *Daubert* challenge when the expert relied upon an accepted formula and peer-reviewed literature in rendering his opinion). Nor does Ms. Mendoza identify any scientific methodology used by Mr. King to reach his conclusion; rather, she argues in a conclusory fashion that Mr. King's methodology was "proceeding from one question to the next in logical order, and engaging in the analysis needed to get the answers to each question, [which] is the heart of the scientific method." [Doc. 33 at 8]. And Mr. King himself never explains why further testing was not required for him to render his opinion. *See* [Doc. 33-1].

The Court is not required "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, (1997). The Court finds that Mr. King's opinion is not sufficiently reliable under Rule 702 absent some articulated basis for his opinion— whether it be additional case-specific testing or a more robust explanation for how he reached his conclusion that different tests would yield a supporting result. "Without information about the underlying facts supporting the expert's conclusion, the opinion

cannot satisfy the strict standard for reliability set forth in Rule 702." *Fischer v. BMW of N. Am., L.L.C.*, No. 18-cv-00120-PAB-MEH, 2020 WL 9259705, at *5 (D. Colo. Mar. 10, 2020) (cleaned up), *aff'd*, No. 20-1399, 2021 WL 5458444 (10th Cir. Nov. 23, 2021); *see also Wright v. Amazon.com, Inc.*, No. 2:19-cv-00086-DAK, 2020 WL 6204401, at *5 (D. Utah Oct. 22, 2020) (excluding opinion where the expert "did nothing to test, show, discuss, or examine" his theory); *Clifton v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-01231-MSK-STV, 2021 WL 1100403, at *8 (D. Colo. Mar. 23, 2021) (excluding opinion where expert's report "simply proffer[ed] the opinion, but [did] not indicate" how the conclusion was derived).   The Motion to Exclude is respectfully **GRANTED** as to Mr. King's opinions related to a "cool to explosively hot" theory or opinions suggesting that using the blender as intended could cause an explosive release.

### B.    Alternative Design Opinions[5]

Mr. King opines that "[d]esign alternatives . . . can mitigate the risk of pressurized separation of the cup and blade assembly."   [Doc. 31-1 at 19].   He provides three examples of alternative designs:  (1) a cup with a "pressure relief valve or plug," [*id.* at 12]; (2) a cup with "a leak path through the cup threads while maintaining sufficient thread engagement to keep the blades and cup attached," [*id.* at 13]; and (3) an unspecified different material choice, [*id.* at 14].

---

[5] Having found that Mr. King is precluded from providing opinions that the NutriNinja at issue is defective based on the "cool to explosively hot" theory, it is not entirely clear that this Court needs to pass on the admissibility of Mr. King's other opinions before granting summary judgment in favor of Defendant for the reasons discussed below.  However, for the sake of completeness and in recognition that Plaintiff may be contemplating a theory of liability that the Court does not sufficiently appreciate, the Court turns to the remainder of Mr. King's opinions.

### 1.   Cup With a Pressure Relief Valve or Plug

Mr. King opines:

> Design changes for known risks are preferable to relying on user compliance to written warnings. With regard to a pressurized vessel, the design should allow for the system to remain intact under anticipated pressures and to have a safe means for releasing pressure.
>
> One design alternative demonstrated is a pressure relief valve or plug. The Omega hot blender was designed using a venting plug (see Figure 8, below). Testing showed that some liquid seeps out of the plug valve while venting, though this is a minor inconvenience compared to pressurized separation and liquid expulsion.

[*Id.* at 12 (emphasis omitted)].

SharkNinja argues that this opinion is unreliable because (1) a pressure-relief component is not required by the applicable industry standard; (2) Mr. King "does not identify any facts, data, or other reliable foundation establishing that the design of the 'pressure relief valve' described in his report actually meets his own standard requiring a 'safe means for releasing pressure'"; (3) Mr. King "does not identify any other facts, data, or other reliable foundation addressing the 'effectiveness' of his proposed design"; and (4) Mr. King does not "make any effort in his report to test or analyze his proposed alternative design." [Doc. 31 at 9–10]. Ms. Mendoza does not respond to this argument or clearly defend the reliability of this opinion. *See* [Doc. 33].[6]

---

[6] With respect to the alternative design opinions, Ms. Mendoza only substantively addresses the third alternative design (a different material choice). *See* [Doc. 33 at 12]. While Ms. Mendoza defends Mr. King's methodology and opinions generally, *see* [*id.* at 7–8], these arguments are not responsive to Defendant's challenge to this specific opinion. Moreover, the Court observes that Defendant construes Ms. Mendoza's argument about the "material choice" alternative design as responsive to Defendant's challenge to Mr. King's opinion about the alternative pressure relief design, *see* [Doc. 36 at 9–10 & n.1], presumably because Plaintiff references a "silicone blowout plug" in her responsive argument, *see* [Doc. 33 at 12]. However, the Court construes this argument as responsive only to Defendant's challenge to the "material choice" alternative design opinion because Plaintiff's argument references a potential "surprise" at trial, [*id.*], and

The Court respectfully agrees with Defendant that Plaintiff has not demonstrated the reliability of this opinion. Setting aside the fact that Ms. Mendoza does not defend this specific opinion's reliability, which suggests that there is no basis for a defense, Mr. King's opinion lacks any adequate explanation as to why a pressure relief valve is an appropriate alternative design for the NutriNinja blender. For example, Mr. King references an "Omega hot blender" (or an "Omega PBL1000BD blender") that contains a pressure relief plug. *See* [Doc. 31-1 at 12–13]. But Mr. King does not provide any information about this Omega blender or how it compares to the NutriNinja blender, and he does not explain why a plug design used in a *hot* blender would be feasible, adequate, or effective in the *NutriNinja* blender. *See* [*id.*]; *cf. Squires*, 829 F. Supp. 2d at 1052 (In cases where a plaintiff proposed an alternative design, the plaintiff "may not merely rest on the expert's proposal" but must instead "show that the alternative design . . . is feasible, adequate and effective."). Instead, it appears that Mr. King assumes that a relief plug is feasible in the NutriNinja blender simply because the plug has been used in another blender. The Court need not accept this sort of "analytical gap." *Gen. Elec. Co.*, 522 U.S. at 146; *cf. Davis v. Johnson & Johnson*, No. 2:20-cv-02635-HLT, 2022 WL 2115075, at *2 (D. Kan. June 9, 2022) (excluding alternative design opinion as unreliable because the expert stated, without explanation, that alternative products were feasible, adequate, and effective alternatives).

Moreover, although Mr. King suggests that an alternative cup design should have "a safe means for releasing pressure," [Doc. 31-1 at 12], he does not actually opine that

---

Defendant only (loosely) references a potential surprise at trial with respect to the "material choice" opinion, *see* [Doc. 31 at 11].

the hypothetical pressure relief valve would in fact be a "safe" option for releasing pressure from the NutriNinja blender's cup if, as Plaintiff contends, the NutriNinja bullet creates significant thermal energy and pressure even when using cool or room-temperature liquids, *see* [*id.*]; *Hickcox v. Hyster-Yale Grp., Inc.*, 715 F. Supp. 3d 1362, 1376 (D. Kan. 2024) (excluding opinion where the expert did not consider the effect the proposed alternative design would have on the safe and effective operation of machinery).  Because this opinion lacks any meaningful explanation or support, the Court finds that it is simply Mr. King's *ipse dixit* and is not sufficiently reliable under Rule 702. Accordingly, the Motion to Exclude is **GRANTED** as to this opinion.

### 2.    Cup with Leak Path

Mr. King opines that "[a]nother [alternative design] option is to provide a leak path through the cup threads while maintaining sufficient thread engagement to keep the blades and cup attached such that the pressure can vent when the cup is initially loosened from the blade assembly gasket."  [Doc. 31-1 at 13].  He further states that "[t]his design was demonstrated in the Ninja BL450, shown below in Figure 9."  [*Id.* at 13 (emphasis omitted)]; *see also* [*id.* at 14 (Mr. King explaining that "[t]he partial circumference threads in the BL450 cup allow a clear venting path when the cup is [initially] loosened from the blade attachment gasket")].

Defendant argues that this opinion is not reliable because Mr. King does not support the opinion by disclosing test results, such as test results showing that "pressure can vent" through the threads on the referenced Ninja BL450 cup or "that such venting

could effectively prevent a pressurized ejection of hot contents." [Doc. 31 at 10]. Again, Ms. Mendoza does not respond to this argument. *See* [Doc. 33].[7]

The Court agrees with Defendant. Mr. King does not indicate that he performed any testing on this proposed alternative design, including whether the proposed alternative would prevent the buildup of thermal pressure or the ejection of the blender's hot contents. *See* [Doc. 31-1 at 13]. Without any testing of this leak path with hot contents or any identification of "a known and undisputed scientific principle or theory that demonstrates testing was unnecessary," *Taber*, 642 F. App'x at 810, there is no reliable basis for Mr. King's speculation that the leak path "could effectively prevent a pressurized ejection of hot contents" in the NutriNinja blender. *See id.*; *see also Heer*, 589 F. App'x at 861 (affirming exclusion of expert testimony where the testimony contained an "analytical gap" and was not supported by testing, calculations, engineering principles, or scientific authority); *Hickcox*, 715 F. Supp. 3d at 1376. To the extent Defendant moves to exclude this opinion, Defendant's Motion is respectfully **GRANTED**.

### 3.    Different Material Choice

Mr. King opines:

Material choice is also relevant when it is known that the contents of the sealed cup may heat up and pressurize. Softening (higher deflection for a given load) of the pressure vessel components (the cup and blade assembly) due to exposure to elevated temperatures can reduce the load bearing capacity of the threaded connection, and contribute to an unexpected separation of the vessel components.

---

[7] Ms. Mendoza argues in a general sense that testing isn't required. [Doc. 33 at 10]. However, this argument is not responsive to Defendant's argument about this specific opinion. Indeed, Ms. Mendoza mentions "leak paths" or "vent paths" only once in her Response, when she simply summarized Mr. King's opinions. [*Id.* at 2].

[Doc. 31-1 at 14].  He does not expressly state what alternative materials would create a safer and feasible, effective, and adequate alternative design.  *See* [*id.*].

SharkNinja again argues that this opinion lacks foundation and is unreliable because Mr. King "does not identify which materials are used in the" NutriNinja blender or "identify any alternative materials that he suggests SharkNinja should have used or any details whatsoever regarding feasibility, adequacy, and effectiveness."  [Doc. 31 at 11 (citing *Squires*, 829 F. Supp. 2d at 1052)].  SharkNinja asserts that this opinion is so lacking in detail that it "violates the basic disclosure requirements of Rule 26(a)(2)(B)." [*Id.*].  Ms. Mendoza's responsive argument too invokes Rule 26 principles, asserting that any suggestion that SharkNinja would be surprised by the specific alternative material choices at trial "is false" because the topic was "covered at length" in the case of *Brown v. SharkNinja Operating, LLC*, 749 F. Supp. 3d 1342 (N.D. Ga. 2024).  [Doc. 33 at 12]. Ms. Mendoza argues that in *Brown*, Plaintiff's counsel provided SharkNinja's expert with an exemplar cup for his own testing and provided "the full details of the silicone blowout plug suggested for pressure release."  [*Id.*].  SharkNinja counters that Plaintiff's attempt to rely on information disclosed in a separate case, "without disclosing those opinions in [Mr. King's] report *in this case*," is improper.  [Doc. 36 at 9–10].

Although the Court is skeptical of Ms. Mendoza's reliance on disclosures in another case to support the sufficiency of her disclosures in *this* case, the Court need not address this argument because it does not construe Defendant's argument as strictly arising under Rule 26.  Rather, SharkNinja's argument mirrors its other challenges to Mr. King's alternative design opinions, asserting that the "material choice" opinion is insufficient under Rule 702 and *Squires* because it does not address the specific NutriNinja blender

Ms. Mendoza used or the feasibility of his proposed alternative design. *Compare* [Doc. 31 at 11], *with* [*id.* at 9–10]. The Court respectfully agrees with Defendant and finds that Mr. King's opinion is not sufficiently supported so as to demonstrate its reliability. Indeed, Mr. King does not address (1) the subject blender's materials; (2) whether there was any "[s]oftening . . . of the pressure vessel components" of the subject blender; (3) what materials would have purportedly been a better alternative option; or (4) the feasibility, adequacy, or effectiveness of his (unexplained) proposed alternative. *Squires*, 829 F. Supp. 2d and 1052. Indeed, Mr. King does not even expressly opine that any defect in the blender's design could be attributed to a choice in materials, instead just cursorily stating that "[m]aterial choice is . . . relevant." [Doc. 31-1 at 14]. Exercising its gatekeeping function, the Court concludes that this opinion lacks the minimum reliability required under Rule 702. The Motion to Exclude is respectfully **GRANTED** with respect to this opinion. *Davis*, 2022 WL 2115075, at *2; *Heer*, 589 F. App'x at 861; *cf. Huss*, 2025 WL 257226, at *8 (excluding Mr. King's opinion about "softening of . . . materials" as speculative because Mr. King did not opine that he tested the subject blender and observed softening of its materials).

### C.    Adequacy of Warnings Opinions

With respect to warnings contained on the NutriNinja blender itself, Mr. King opines that "[a]lthough the on-product warnings comply with UL 982 regarding blending with hot liquids, the lack of visibility contributes to a failure to communicate with the user. Other sealed cup makes and models demonstrate warnings that remain visible when the blender is ready to use." [Doc. 31-1 at 19]. SharkNinja argues that this opinion should be excluded because, inter alia, Mr. King is not qualified to offer it. [Doc. 31 at 13]. In

her Response, Ms. Mendoza "concedes Mr. King's opinion No. 4 related to on-product warnings." [Doc. 33 at 2 n.1]. Because Ms. Mendoza, who bears the burden of demonstrating the admissibility of Mr. King's testimony, *see Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001), "concedes" this issue, and because neither Mr. King's report nor his curriculum vitae lists any relevant experience or education related to product warnings, *see* [Doc. 31-1; Doc. 33-6], the Court agrees that this opinion should be excluded, *see Perez v. Sunbeam Prods., Inc.*, No. 21-cv-01915-PAB-KAS, 2024 WL 2979450, at *4 (D. Colo. June 13, 2024) (excluding engineer's opinions about product warnings and collecting similar cases); *see also Brown*, 749 F. Supp. 3d at 1357–58 (finding Mr. King was not qualified to opine about blender's warnings). The Motion to Exclude is **GRANTED** as to Mr. King's opinions about product warnings.

### D.    Opinions About the Adequacy of Defendant's "Risk Assessment"

Mr. King opines that "SharkNinja should have conducted [a Failure Modes and Effects Analysis ("FMEA")] or other Risk Assessment to eliminate unnecessary risks as part of their design process." [Doc. 31-1 at 18]. Defendant argues that the Court should exclude this opinion as unreliable because Mr. King "discloses no facts or data or other reliable foundation establishing that SharkNinja did not conduct an FMEA or other risk assessment method." [Doc. 31 at 16]. Moreover, Defendant contends that Mr. King "does not explain how this [alleged] failure contributed to any defect in the BL680A that, in turn, contributed to Plaintiff's incident." [*Id.*]. Ms. Mendoza does not directly respond to this argument. Instead, she directs the Court to the following provision in Mr. King's report:

> Once hazards or defects are identified, such as the risk of heat and pressure build up noted in the user manual, the engineering standard of care is to

mitigate by design if possible, rather than simply warning against them. The concept of eliminating hazards first and warning only if eliminating the hazard is not practical began to appear in the engineering and design literature as early as 1953[.]

[Doc. 31-1 at 17; Doc. 33 at 8]. Ms. Mendoza asserts that with this statement, Mr. King "explain[ed] why SharkNinja's touted warnings do not satisfy the requirements of a proper FMEA." [Doc. 33 at 8].

Ms. Mendoza's assertion is not responsive to Defendant's argument. She does not point the Court to any place in Mr. King's report where he explains how he came to the conclusion that SharkNinja "did not conduct an FMEA or other risk assessment method." *See* [*id.*]. And contrary to Ms. Mendoza's characterization of Mr. King's report, Mr. King did *not* explain how SharkNinja's warnings "[did] not satisfy the requirements of a proper FMEA." Mr. King stated that it is an industry standard to try to eliminate risks if possible, rather than just warning against them, and then concludes—without explanation—that SharkNinja "should have conducted an FMEA or other Risk Assessment to eliminate unnecessary risks as part of their design process." [Doc. 31-1 at 17–18]. Without any supporting explanation for this assertion, the Court can only conclude that Mr. King *assumes* that because SharkNinja included a warning against using the blender to blend hot liquids, SharkNinja did not attempt to mitigate any dangers associated with risks of heat and pressure build-up. This approach is incompatible with Rule 702's requirement that expert testimony must be based on "sufficient facts or data" and "reliable principles and methods." Fed. R. Evid. 702(b)–(c); *see also Dodge*, 328 F.3d at 1222 (for opinions to be reliable, they must be based on actual knowledge, not unsupported speculation).

"[A]n expert's opinions are not admissible merely because the expert says, in effect, 'trust me, I know.'" *Mooring Cap. Fund, LLC v. Phoenix Cent., Inc.*, No. 06-cv-00006-HE, 2009 WL 4263359, at *5 (W.D. Okla. Feb. 12, 2009), *aff'd*, 388 F. App'x 814 (10th Cir. 2010). Because Mr. King's opinion is not tied to any concrete facts, and because he does not explain how he came to the conclusion that SharkNinja failed to perform a risk assessment, this *ipse dixit* opinion does not satisfy the requirements of Rule 702. Ms. Mendoza has not met her burden of demonstrating the reliability and admissibility of this opinion, and the Motion to Exclude is **GRANTED** as to this opinion. *See Wadsworth v. Walmart Inc.*, No. 2:23-cv-00118-KHR, 2025 WL 1492889, at *5 (D. Wyo. Jan. 29, 2025) (excluding Mr. King's opinion that the defendant failed to perform an FMEA as "speculative and unreliable"); *Bettencourt v. SharkNinja Operating LLC*, No. 22-cv-09091-CRB, 2024 WL 3187148, at *7 (N.D. Cal. June 25, 2024) (Mr. King's opinions about adequacy of the defendant's FMEA were speculative and unreliable).

In sum, the Court finds that Plaintiff has not met her burden to demonstrate the admissibility of any of the challenged opinions. The Motion to Exclude is **GRANTED**.

## II.    The Motion for Summary Judgment

It is well-settled that a claim for strict liability for design defects requires the following elements: "(1) the product is in a defective condition unreasonably dangerous to the user or consumer; (2) the product is expected to and does reach the consumer without substantial change in the condition in which it is sold; (3) the design defect caused the plaintiff's injury; (4) the defendant sold the product and is engaged in the business of selling products; and (5) the plaintiff sustained damages." *Mariani v. Titeflex Corp.*, No. 13-cv-01720-MSK-BNB, 2014 WL 3402514, at *6 (D. Colo. July 10, 2014). A negligence

claim based on an alleged product defect requires the plaintiff to prove (1) the defendant manufactured the product; (2) the defendant failed to exercise reasonable care in the manufacturing of the product; (3) the plaintiff was one of the persons the defendant reasonably should have expected to use the product; and (4) the plaintiff suffered injuries caused by the defendant's negligence.  Colo. Jury Instr., Civil § 14.17; *Price v. Wilson Sporting Goods Co.*, No. 03-cv-02639-WYD-OE, 2005 WL 1677512, at *6 (D. Colo. July 18, 2005).

### A.    Undisputed Material Facts

Ms. Mendoza used the NutriNinja blender to make a menudo sauce.  [Doc. 32 at ¶ 6; Doc. 34 at 2 ¶ 6; Doc. 32-2 at 60:15–61:7].[8]  After blending the ingredients, Plaintiff turned the blender cup over and opened it, at which time the liquid projected from the cup and "straight onto her face."  [Doc. 32 at ¶ 10; Doc. 34 at 2 ¶ 10; Doc. 32-2 at 77:21–78:10].  Plaintiff's theory of design defect is that using the NutriNinja blender for a short amount of time generates frictional energy, heat, and pressure that can cause the cup's hot contents to explosively project without warning, either during blending or immediately after.  [Doc. 32 at ¶ 14; Doc. 34 at 2–3 ¶ 14;[9] Doc. 32-4 at 9 (Plaintiff directing Defendant

---

[8] When citing to transcripts, the Court cites to the document number assigned by the CM/ECF system and to the page and line numbers on the transcript pages.  In all other instances, the Court cites to the page numbers assigned by the CM/ECF system instead of the pagination provided by the Parties.

[9] Plaintiff attempts to dispute this fact as "argumentative and inconsistent with Mr. King's opinions and report."  [Doc. 34 at 2 ¶ 14].  She does not explain her denial, instead simply listing other statements in Mr. King's report.  [*Id.* at 2–3 ¶ 14].  However, none of these statements contradict Defendant's description of Plaintiff's theory of design defect.  Moreover, Defendant's description of Plaintiff's defect theory is consistent with Plaintiff's own description contained in her Complaint and referenced in her interrogatory answers.  [Doc. 1 at ¶¶ 18–20; Doc. 32-4 at 9)].  The Court thus deems this fact undisputed.  Fed. R. Civ. P. 56(e)(2).

to her Complaint when asked to set forth all facts showing the blender was defective);
Doc. 1 at ¶ 2 ("The NutriNinja blenders are defectively designed . . . in that[] the extremely
fast-moving blade of the blenders heat the contents of the sealed bullet-shaped canister,
which can (and does) unexpectedly explode when being used in its normal and intended
manner by consumers."); *id.* at ¶¶ 18–20 (alleging that when users put cool or room
temperature contents into the blender's cup, use of the blender "creat[es] friction" and
"causes the contents to heat up," such that "pressure from the frictional energy also rises"
and "the hot contents of the cup . . . explosively project outward without warning")].

Plaintiff's liability expert, Mr. King, evaluated the subject blender. [Doc. 32 at ¶ 12;
Doc. 34 at 2 ¶ 12; Doc. 31-1 at 5–7]. Mr. King's expert report does not disclose an opinion
that blending cool or room temperature ingredients for any length of time could cause an
explosive projection of hot contents. [Doc. 32 at ¶ 17; Doc. 34 at 3 ¶ 17;[10] Doc. 31-1].
Rather, the report states that Ms. Mendoza's accident "likely" involved blending "warm or
hot water" or using the blender "for longer than a minute." [Doc. 32 at ¶ 19; Doc. 34 at 4
¶ 19; Doc. 31-1 at 10]. Mr. King's report does not disclose any testing beyond blending
cold water. [Doc. 32 at ¶ 20; Doc. 34 at 4 ¶ 20;[11] Doc. 31-1]. Additionally, Mr. King's
report does not define "warm" ingredients, address whether blending "warm" ingredients

---

[10] Plaintiff denies this statement "in part," but does not explain which part she denies and
which she admits. [Doc. 34 at 3 ¶ 17]. Moreover, she denies the statement as
"argumentative and taken out of context," citing caselaw for the proposition that an
expert's opinions are not "speculative or conjecture" just because they do not align with
a plaintiff's testimony. *See* [*id.*]. However, this assertion is not responsive to Defendant's
description of the contents of Mr. King's report. Because Plaintiff has not properly denied
this statement, the Court deems it undisputed. Fed. R. Civ. P. 56(e)(2).

[11] Plaintiff attempts to dispute this statement as "argumentative, misleading, and
inconsistent with applicable law." [Doc. 34 at 4 ¶ 20]. Ms. Mendoza's citations to case
law applying Rule 702 and *Daubert* are immaterial to whether Mr. King's report discloses
additional testing. The Court deems this fact undisputed. Fed. R. Civ. P. 56(e)(2).

could cause Plaintiff's accident, or address the usefulness of any of his proposed alternative designs. [Doc. 32 at ¶¶ 21, 25; Doc. 34 at 5 ¶¶ 21, 25;[12] Doc. 31-1].

**B.    Analysis**

As a preliminary matter, in her Response, Plaintiff "concedes her claims for manufacturing defect, failure to warn defect and implied warranties" and does not oppose the entry of summary judgment with respect to those claims. [Doc. 34 at 14–15 (capitalization altered)]. Accordingly, the Motion for Summary Judgment is **GRANTED** with respect to Count One, to the extent it asserts a manufacturing defect claim, Count Three, and Count Four. The Court's remaining analysis is limited to the portion of Count One asserting a design defect claim and Count Two, the negligence claim.

SharkNinja seeks judgment in its favor on Plaintiff's strict liability design defect and negligence claims on the basis that Plaintiff "has no evidence of a design defect." [Doc. 32 at 12]. It contends first that Plaintiff has not disclosed any expert testimony supporting her theory that the blender can cause cool or lukewarm contents to heat up, pressurize, and explode. [*Id.*]. It also argues that Plaintiff cannot establish causation because she has produced no admissible expert testimony that blending cold or lukewarm contents for any period of time can cause a pressurized release of hot contents. [*Id.* at 14–15]. Ms. Mendoza responds that "the majority of SharkNinja's argument rest[s] on the assumption that Plaintiff is unable to present the testimony of her expert, Mr. King." [Doc. 34 at 12]. She argues that "[s]ince Mr. King's opinions are admissible related to Plaintiff's design defect claims, Defendant's arguments fail, and its motion should be denied." [*Id.*]. She

---

[12] *See supra* notes 9–11.

also argues that causation is a question of fact for the jury, so summary judgment is not warranted on this basis. [*Id.* at 13–14].

While the Court acknowledges that the briefing on the Motion for Summary Judgment was complete before the Court ruled on the Motion to Exclude, the Court observes that Plaintiff points the Court to no other expert testimony that could support her remaining claims. Nor does she argue that expert testimony is not required to succeed at trial. For the reasons set forth below, the Court finds that summary judgment in Defendant's favor is appropriate.

First, both of Plaintiff's remaining claims require proof of a design defect. *See Mile Hi Concrete, Inc. v. Matz*, 842 P.2d 198, 205 (Colo. 1992) ("Regardless of whether a product liability action is grounded in negligence or strict liability, a plaintiff must prove that the product was defective."); *Fischer*, 2020 WL 5798526, at *3; *Faulhaber v. Petzl Am., Inc.*, No. 22-cv-00102-GPG-TPO, 2025 WL 1225650, at *13–14 (D. Colo. Mar. 21, 2025); *see also* Colo. Jury Instr., Civil §§ 14:1, 14.17.

Second, "[i]n Colorado, expert testimony is required to prove an issue 'where the issue does not lie within the ambit of common knowledge of ordinary persons.'" *Fischer*, 2020 WL 5798526, at *3 (quoting *Park Rise Homeowners Ass'n, Inc. v. Res. Const. Co.*, 155 P.3d 427, 430 (Colo. App. 2006)). When proof of a claim element "requires answering technical questions which are beyond the discernment capacity of laypersons," expert testimony may be required. *Mathison v. United States*, 619 F. App'x 691, 694 (10th Cir. 2015) (applying Colorado law). "Oftentimes, the existence of a design defect falls outside the common knowledge or experience of ordinary persons." *Faulhaber*, 2025 WL 1225650, at *15.

Indeed, courts have often ruled in products liability cases that expert testimony is required to prove that a product was defectively designed. *See, e.g.*, *Fischer*, 2020 WL 5798526, at *3 (finding that whether a tire jack was defectively designed was "beyond the ambit of common knowledge or experience of ordinary persons"); *Faulhaber*, 2025 WL 1225650, at *15 (whether shunt used for rock climbing was defectively designed was a technical issue that require expert testimony); *Hauck v. Michelin N. Am., Inc.*, 343 F. Supp. 2d 976, 988–89 (D. Colo. 2004) (the mere fact that a tire failed was insufficient proof of a defect, and expert testimony was required to prove a defect). Like these cases, Plaintiff's theory in this case—that using a blender to blend cold or lukewarm liquids could create sufficient heat and pressure to lead to a pressurized explosion of hot liquids—requires answering technical scientific questions and is not "something the typical juror could intuit without expert assistance." *Faulhaber*, 2025 WL 1225650, at *15. Because finding a design defect in the NutriNinja blender is not within the common knowledge and experience of ordinary jurors, expert testimony is required to prove this element. *Id.*

Third, this Court has excluded Mr. King's opinions with respect to any design defect, leaving Ms. Mendoza without any admissible expert testimony on that topic.[13] Because expert testimony is required to prove Ms. Mendoza's claims, and because she lacks that testimony, Ms. Mendoza cannot establish a requisite element of her remaining claims and cannot prevail at trial. Summary judgment in Defendant's favor is thus appropriate. *See Fischer*, 2020 WL 5798526, at *4 (entering judgment in the defendant's favor after excluding the plaintiff's liability expert, such that plaintiff could not prove design

---

[13] The Court acknowledges that Defendant's Motion to Exclude did not seek to exclude the entirety of Mr. King's opinions. However, after the Court's rulings on the Motion to Exclude, Mr. King has no admissible opinions about the existence of a design defect.

defect); *Faulhaber*, 2025 WL 1225650, at *15 (same); *Hauck*, 343 F. Supp. 2d at 989 (same); *Huss*, 2025 WL 257226, at *13 (same).  Accordingly, Defendant's Motion for Summary Judgment is respectfully **GRANTED**.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)    SharkNinja's Motion to Exclude Expert Testimony of Derek King [Doc. 31] is **GRANTED**;

(2)    SharkNinja's Motion for Summary Judgment [Doc. 32] is **GRANTED**;

(3)    Judgment **SHALL ENTER** in favor of Defendant and against Plaintiff on each of Plaintiff's claims;

(4)    Defendant is entitled to its costs under D.C.COLO.LCivR 54.1; and

(5)    The Clerk of Court is directed to close this case.

DATED:  September 22, 2025              BY THE COURT:

                                        _____
                                        Nina Y. Wang
                                        United States District Judge